

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-18-00109-CR

_____

WILLIAM PAUL WEST, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 415th District Court
Parker County, Texas
Trial Court No. CR16-0789

---

Before Kerr, Birdwell, Bassel, JJ.
Memorandum Opinion by Justice Kerr

## MEMORANDUM OPINION

A jury convicted appellant William Paul West for driving while intoxicated, his third such offense and thus a felony. *See* Tex. Penal Code Ann. § 49.09(b)(2).

West's appeal stems from a trial exchange between the prosecutor and a witness, during which the prosecutor described an exhibit as having been edited for "inadmissible" material. Specifically, West complains about this sequence:

> [PROSECUTOR]:  Trooper, I'm handing you what's marked as State's Exhibit 3. It's a CD.
>
> [THE WITNESS]:  Yes, sir.
>
> [PROSECUTOR]:  Have you observed the contents of that CD?
>
> [WITNESS]:  Yes, sir.
>
> [PROSECUTOR]:  Do you believe that fairly and accurately represents your observations that evening?
>
> [THE WITNESS]:  Yes, sir.
>
> [PROSECUTOR]:  Other than the agreed-upon edits by defense counsel and counsel for the State of *inadmissible*[1] material, has that been edited in any way to your knowledge? [Emphasis added.]
>
> [THE WITNESS]:  No, sir.
>
> [PROSECUTOR]:  Your Honor, I move to submit State's Exhibit No. 3 into evidence.

---

[1]It is uncertain what the prosecutor meant by "inadmissible" material in this instance. The CD video in question contains arrest footage from the witness's patrol-car dashcam. Audio was redacted from some video sequences to exclude references to West's prior DWI convictions. Even so, West grounds his appeal on the prosecutor's using the word "inadmissible" and not on the prosecutor's revealing actual inadmissible material to the jury.

[DEFENSE COUNSEL]:  Judge, can we approach?

(Conference at the bench.)

[DEFENSE COUNSEL]:  I don't know why he just said that there's been redactions to this video of evidence that's not admissible. I mean, that's very prejudicial.

The judge then excused the jury, and the parties conferenced further. Defense counsel then formally objected to the prosecutor's question, specifically his using the word "inadmissible." Defense counsel requested the trial court to instruct the jury to disregard and moved for a mistrial on the ground that the question, as worded, was prejudicial because it suggested to the jury that the parties had manipulated the evidence. The trial court denied the motion but instructed the jury to disregard any statement made by the prosecutor concerning "admissibility" because that would be a legal issue for the court. West now appeals the denial of his motion for a mistrial.

## Standard of Review

When a trial court denies a mistrial motion, our review is for an abuse of discretion. *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). "A mistrial is an appropriate remedy in 'extreme circumstances' for a narrow class of highly prejudicial and incurable errors." *Id.* (citing *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004)). We consider the arguments before the trial court when it denied the motion, and we view all evidence in the light most favorable to that ruling. *See id.* A trial court abuses its discretion if its ruling falls ouside the zone of reasonable disagreement. *Id.*

3

## Discussion

Assuming that the prosecutor's question was improper, we examine whether it was harmful. *See Hawkins*, 135 S.W.3d at 77 (stating that whether a trial court abuses its discretion in denying a mistrial involves most, if not all, of the same considerations that attend a harm analysis). Both the Texas Court of Criminal Appeals and our court apply the three-factor harmless-error test to determine whether a trial court abused its discretion in denying a motion for mistrial due to prosecutorial misconduct, examining (1) the severity of misconduct, (2) any curative measures, and (3) the certainty of the conviction. *See, e.g.*, *Gallo v. State*, 239 S.W.3d 757, 767 (Tex. Crim. App. 2007) (addressing improper argument); *Ramon v. State*, 159 S.W.3d 927, 929–32 (Tex. Crim. App. 2004) (involving prosecutorial testimony); *Harper v. State*, 508 S.W.3d 461, 470 (Tex. App.—Fort Worth 2015, pet. ref'd) (stating the test applies to improper question). After applying these factors, we hold that the trial court did not abuse its discretion in denying West's motion.

### 1.  Severity of Misconduct

Prejudicial effect is the first factor's touchstone. *Hawkins*, 135 S.W.3d at 77. We consider whether the prosecutor's question was clearly calculated to inflame the jurors' minds and was of such a character as to suggest that withdrawing the impression was impossible. *Harper*, 508 S.W.3d at 470 (citing *Gonzalez v. State*, 685 S.W.2d 47, 49 (Tex. Crim. App. 1985)). A mistrial is warranted if the question was obviously harmful to the defendant. *Id.*

4

West contends that the purported misconduct—the prosecutor's uttering the word "inadmissible" within his question—was prejudicial because the jury was led to believe that counsel manipulated the evidence and that they were not getting the full story. West likens his case to *Vu Hoang Nguyen v. State*, in which the defendant moved for mistrial during witness examination after a prosecutor accused defense counsel of attempting to "mislead the jury." No. 14-07-00322-CR, 2008 WL 2262054, at *6 (Tex. App.—Houston [14th Dist.] May 29, 2008, pet. ref'd) (mem. op., not designated for publication). There, the trial court denied the defendant's motion and the appellate court affirmed, holding that the statement's effect was "minimal under the circumstances." *Id.* at *7.

To the extent, if any, that *Nguyen* supports West's argument, it is distinguishable. The prosecutor's objection in that case directly accused defense counsel of attempting to mislead the jury. *Id.* at *6. Here, the prosecutor's question informed the jury, in substance, only that both parties had mutually agreed to redact some of the audio—the jury was not told what had been said—because it was inadmissible. This question was far less egregious than the State's accusational objection in *Nguyen*, which, again, the appellate court labeled as "minimal under the circumstances." *Id.* at *7.

West's case is more analogous to *Hawkins*, where the defendant moved for mistrial after objecting to a prosecutor's "misstatement of law." 135 S.W.3d at 74. There, the prosecutor erroneously said that, under parole law, the defendant would be

5

released back into the community after serving only one-fourth of his sentence. *Id.* The statement was false because the defendant would only become *eligible* for parole after that time period. *Id.* The trial court denied the mistrial motion, and the court of criminal appeals concluded, after applying a version of the three-factor harmless-error test, that the trial court had not abused its discretion because the misstatement was isolated, not egregious, and curable by instruction. *Id.* at 74, 77, 83–85. For the reasons discussed below, we reach the same conclusion.

Here, the prosecutor's question was technically a legal misstatement because it suggested that counsel themselves could determine matters of admissibility.[2] *See Sherman v. State*, 428 S.W.2d 338, 342 (Tex. Crim. App. 1968) (stating that questions of admissibility are at the trial judge's exclusive discretion). While the prosecutor described the edited material as "inadmissible," he neutralized any possible prejudice when he simultaneously stated that both parties, including West,[3] had agreed to the edits: "Other than the *agreed-upon edits by defense counsel and counsel for the State* of

_____

[2]West's attorney acknowledged as much during the conference when she said, of the curing instruction, "Well, I want it to be what the law is and . . . the Judge determines admissibility or inadmissibility, not [the prosecutor] and I or the Trooper or what we've all agreed to is the hand cherry-picked evidence that we're going to show . . . ."

[3]During the conference, both parties acknowledged the mutuality of the edits. Defense counsel asserted, "[W]*e've* admitted *we* have actually manipulated evidence and taken out something," and the prosecutor later stated, "My comment was *the State and defense counsel agreed* to these manipulations. And that is the truth." [Emphasis added.]

6

inadmissible material, has that been edited in any way to your knowledge?" [Emphasis added.] The impression created for the jury, if any, was simply that the parties had mutually agreed to the edits, whatever they might have been. West fails to show, and we struggle to see, how this impression prejudiced him.[4]

The question's nature also matters. *See Rideaux v. State*, 498 S.W.3d 634, 640 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (reasoning that an improper question's prejudicial effect was minimal when it was brief and not emphasized); *Hawkins*, 135 S.W.3d at 83–84 (reasoning that an isolated and perceivably accidental legal misstatement lessened the misconduct's severity). The alleged misconduct at issue here is just one word, an adjective, within an otherwise proper question asked during witness examination. West does not argue that the State emphasized the word "inadmissible," and the record indicates that this was the only time the jury heard the prosecution say it. In fact, the defense did not object to the prosecutor's rephrasing the question in a substantially similar way: "To your knowledge, other than approved edits by State and defense counsel, has this been altered in any way?"

Finally, the prosecutor's question was necessary to authenticate the video. *See generally* Tex. R. Evid. 901(b) (listing satisfactory ways to authenticate evidence). The prosecution explained that the question, as phrased, provided context for why certain

---

[4]West's attorney suggested during the conference that the question could actually advantage him: "[W]e've admitted we have actually manipulated evidence . . ., be it to Mr. West's advantage or disadvantage."

video sequences lacked audio. The prosecutor needed to give this context so that the state trooper could testify truthfully about the extent of the video's authenticity.[5] *See Crivello v. State*, 4 S.W.3d 792, 802 (Tex. App.—Texarkana 1999, no pet.) (stating that a police officer's testimony helped authenticate a DWI arrest videotape when he said it was what it claimed to be.)

In sum, we cannot say that the prosecutor's initial phrasing was clearly calculated to inflame jurors' minds or was otherwise obviously harmful to West. The first factor weighs favorably to the State.

## 2. Curative Measures

Whether a jury instruction suffices to cure error depends on the case's facts. *Ocon*, 284 S.W.3d at 884. Generally, a prompt instruction to disregard cures error caused by an improper question and answer. *Simpson v. State*, 119 S.W.3d 262, 272,

---

[5]On appeal, West does not contest the trooper's authenticating testimony, and so we need not discuss it. *See State v. Bailey*, 201 S.W.3d 739, 744 (Tex. Crim. App. 2006) (holding that a reviewing court cannot reach out on an issue that was not raised); *Cobb v. State*, No. 03-05-00159-CR, 2006 WL 1865586, at *2 n.2 (Tex. App.—Austin July 7, 2006, pet. ref'd) (mem. op., not designated for publication) (declining to address an issue that the appellant had not raised). Yet counsel for both parties discussed this dynamic during the bench conference:

> [DEFENSE COUNSEL]: I don't know how to, you know, explain to the jury we've left out a part of evidence that this man's going to swear this an accurate representation of what went on that night.

> [PROSECUTOR'S CO-COUNSEL]: And, Judge, I think that's been done. That was why the question was asked. I mean, I think the jury deserves an explanation, but it doesn't need to be belabored on it. There's been some edits and okay.

274 (Tex. Crim. App. 2003) (quoting *Ovalle v. State*, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000)) (holding that the instruction to disregard cured error from a question eliciting the victim's son's opinion about proper punishment for the defendant); *see also Moore v. State*, 882 S.W.2d 844, 847 (Tex. Crim. App. 1994) (holding that the instruction cured the harm from a racially suggestive question); *Swallow v. State*, 829 S.W.2d 223, 227 (Tex. Crim. App. 1992) (holding that the instruction cured error from prosecutor's question suggesting that defendant had prior DWI arrest), *overruled on other grounds by Randolph v. State*, 353 S.W.3d 887, 895 (Tex. Crim. App. 2011). As with improper questions and answers, misstatements of law are also curable by instruction. *See Hawkins*, 135 S.W.3d at 84–85 (reasoning that such an instruction accompanied by clarification cured a misstatement about parole law).

The question in dispute here did not actually expose the jury to or otherwise identify inadmissible evidence. West takes issue solely with the prosecutor's using the word "inadmissible." Like *Hawkins*, this one-off was curable by an instruction to disregard and clarification about what constituted the misstatement. *See id.* at 85. The trial court here stated: "The Court instructs the jury to disregard and not consider for any purpose any statement made by counsel for the State regarding editing or admissibility of evidence in this case as *admissibility is a matter of law for the determination by the Court.*" [Emphasis added.]

When a judge instructs a jury to disregard, we presume that the jurors followed the instruction unless the particular case's facts suggest otherwise. *See Waldo v. State*,

9

746 S.W.2d 750, 753–54 (Tex. Crim. App. 1988); *see also Thompson v. State*, Nos. 02-18-00230-CR, 02-18-00231-CR, 02-18-00232-CR, 2019 WL 1065925, at *8 (Tex. App.—Fort Worth March 7, 2019, pet. ref'd) (mem. op., not designated for publication) (noting the rebuttable presumption that jurors follow the trial court's instructions in the manner presented). The record does not indicate, and West does not argue, any contrary facts. Thus, the second factor also weighs favorably to the State.

### 3. Certainty of Conviction

The third factor assesses the likelihood that the appellant would have been convicted without the misconduct. *Ramon*, 159 S.W.3d at 931. Strong evidence against an appellant undermines an argument for abuse of discretion. *See id.* at 931–32 (weighing eyewitness testimony and DNA evidence in affirming denied mistrial).

In the present case, eyewitness testimony reports seeing a stationary offroad vehicle in contact with a utllity pole and fence, hearing the engine rev up, and observing one person, West, later get out of that vehicle. State troopers testified that West admitted to losing control of his vehicle and sliding off the road and that he admitted to having consumed five or six beers. They further stated that West slurred his speech, struggled with balancing and walking, and was uncooperative during the standard field-sobriety test. The State submitted into evidence patrol-car-dashcam footage of the arrest, which corroborated the troopers' testimony. The troopers also testified that West's eyes were glassy and bloodshot and that he had an alcohol odor

on his breath. Finally, West's blood-alcohol concentration was 0.361 grams of alcohol per 100 milliliters of blood, well over the legal limit of .08 grams.

The evidence's cumulative weight supports the jury's still convicting West even without the prosecutor's having used the word "inadmissible" in his question. Thus, this final factor also weighs favorably to the State.

## Weighing the Factors

In weighing these three factors, we are reminded that "[i]nappropriate prosecutorial comments, standing alone, would not justify a reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding." *U.S. v. Young*, 470 U.S. 1, 11, 105 S. Ct. 1038, 1044 (1985).

Given the question's neutral, brief, and non-emphasized nature, the judge's instruction to disregard, and the cumulative evidence against West, we hold that (assuming the question's impropriety) the trial court's ruling was within the zone of reasonable disagreement, and thus the court did not abuse its discretion in denying the motion for mistrial.

## Conclusion

We overrule West's only issue and affirm the trial court's judgment.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: August 1, 2019